United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 9, 2007**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 06-30444

MAE THOMPSON LEE,

Plaintiff-Appellant,

versus

RICHARD L. STALDER, et al.,

Defendants-Appellees.

Appeal from the United States District Court
for the Middle District of Louisiana
(04-CV-410)

Before JONES, Chief Judge, and JOLLY and STEWART, Circuit Judges.

PER CURIAM:[*]

Mae Lee appeals a grant of summary judgment based on qualified immunity and the denial

of a Rule 56(f) Motion to Continue. We affirm.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Gregory Lee ("inmate Lee") died at Elayn Hunt Correctional Center ("EHCC") on June 22,

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

2003. Inmate Lee's mother, Mae Lee ("Lee"), filed suit against various Louisiana state officials and prison employees alleging that her son's civil rights under the Eighth and Fourteenth Amendments were violated and seeking damages under 42 U.S.C. §1983. Only Dr. Michael Edwards Hegmann ("Dr. Hegmann") and Nurse Kathy Hancock ("Hancock") remain as defendants. When inmate Lee arrived at EHCC, Dr. Hegmann was medical director and Hancock was a licensed nurse practitioner and resident nurse.

Inmate Lee was received at EHCC on Tuesday, June 17, 2003, pursuant to a transfer from another facility. Inmate Lee arrived in a mentally agitated state and required physical restraints. The report from the transferring facility indicated that inmate Lee was HIV positive. He was placed in the mental health nursing unit both to have medication administered and to receive treatment from mental health providers.

Dr. Hegmann and Nurse Joni Nickens, who had special qualifications in treating HIV positive patients, were called in to evaluate inmate Lee. Dr. Hegmann concluded that inmate Lee was "very sick." Nickens ordered a standard blood analysis, chest x-ray, HIV viral load, and a CD4 count, as part of the normal in-processing for a newly received sick inmate with HIV. Inmate Lee's blood tests came back on Friday, June 20, 2003, and were reviewed by Hancock. The tests showed abnormal values, which Hancock concluded were consistent with inmate Lee's HIV positive condition. Hancock did not believe the tests represented an emergency condition. He scheduled inmate Lee to be seen and to have the lab results evaluated the following Monday, June 23, 2003, by Nickens.

Inmate Lee was not placed on anti-viral medications. Dr. Hegmann testified that if an HIV patient is started on a regimen of anti-viral medications but he is non-compliant, the HIV is known to mutate, becoming resistant to the anti-virals and rendering the anti-virals ineffective in the future

treatment of the patient's HIV. Nickens had the training and experience to conduct such counseling regarding anti-viral drugs for HIV patients.

Inmate Lee died on Sunday, June 22, 2003, before meeting with Nickens and thus, before the necessary process for beginning anti-viral medications could be completed. Shortly before he died, he was observed walking around and did not appear to be suffering from an emergency condition. The autopsy revealed that the cause of death was most likely heart trouble. Dr. Hegmann testified that he believed inmate Lee's sudden death resulted from a cardiac arrythmia caused by complications of HIV.

On September 6, 2005, defendant's motion for summary judgment was referred to the Magistrate Judge. On November 8, Lee filed a Motion for Leave to Extend Time to take the depositions of Dr. Hegmann and Hancock. That motion was granted. Lee filed two Motions to Compel and Alternatively for Additional Discovery, the second of which was granted in part and denied in part. On February 2, 2006, the Magistrate Judge issued a memorandum opinion recommending that the district court grant the defendants' Motion for Summary Judgment. On February 16, Lee filed a Rule 56(f) Motion for Continuance of the defendants' motion for summary judgment. The district court denied Lee's Rule 56(f) motion and adopted the Magistrate Judge's findings.

## II. STANDARD OF REVIEW

A.

We review de novo the denial of summary judgment predicated on qualified immunity. *Beltran v. City of El Paso*, 367 F.3d 299, 302 (5th Cir. 2004).

We use a two-step approach to analyze qualified immunity claims. *Price v. Roark*, 256 F.3d

364, 369 (5th Cir. 2001). First, we "consider whether the facts alleged, taken in the light most favorable to the party asserting the injury, show that the officer's conduct violated a constitutional right." *Id*. (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). If the plaintiff's allegations could make out a constitutional violation, we then "ask whether the right was clearly established--that is, whether 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Id*. (quoting *Saucier*, 533 U.S. at 201). "If, upon viewing the evidence in the light most favorable to the [plaintiff], reasonable public officials could differ on the lawfulness of the defendant's actions, the defendant is entitled to qualified immunity." *Southard v. Tex. Bd. of Criminal Justice*, 114 F.3d 539, 550 (5th Cir. 1997). This inquiry is an objective one, not dependant on the particular officer's subjective beliefs. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

B.

Rule 56(f) provides non-movants with an important tool "to keep open the doors of discovery in order to adequately combat a summary judgment motion." *Wichita Falls Office Assoc. v. Banc One Corp.*, 978 F.2d 915, 919 (5th Cir. 1992). The rule authorizes a district court to "order a continuance to permit affidavits to be taken or depositions to be taken or discovery to be had," if the non-movant files affidavits showing that he or she "cannot for reasons stated present by affidavit facts necessary to justify the party's opposition." Rule 56(f). Although motions under Rule 56(f) "are favored and should be liberally granted," the denial of such a motion is reviewed for abuse of discretion. *Beattie v. Madison County Sch. Dist.*, 254 F.3d 595, 605-06 (5th Cir. 2001). A non-movant seeking relief under Rule 56(f) must "show (1) why she needs additional discovery and (2) how that discovery will create a genuine issue of material fact." *Id*. at 605. The non-movant cannot "simply rely on vague assertions that additional discovery will produce needed, but

4

unspecified, facts." *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 305 (5th Cir. 2004).

## III.  DISCUSSION

### A.

The Government has an obligation to provide medical care for those whom it is punishing by incarceration, and deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain," proscribed by the Eighth Amendment. *See*, U.S.C.A. Const. Amend. 8; *Estelle v. Gamble*, 429 U.S. 97 (1976). In order to make out a claim of deliberate indifference, as part of the first prong of this Court's qualified immunity test, a petitioner must demonstrate that prison officials knew of and disregarded a substantial risk of serious harm. *See*, *e.g.*, *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Domino v. Texas Dep't of Crim. Justice*, 239 F.3d 752, 755 (5th Cir. 2001). Therefore, Lee must demonstrate that Dr. Hegmann and Hancock knew of and disregarded an excessive risk that inmate Lee would die from HIV complications.

Deliberate indifference is an extremely difficult standard to meet. Incorrect diagnosis, by itself, is insufficient to past muster. "The plaintiff must show that the officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Domino*, 239 F.3d at 756 (quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)).

In the case of inmate Lee, there is insufficient evidence of deliberate indifference. The test results that Hancock reviewed did not indicate inmate Lee's heart condition. Furthermore, there is little evidence to suggest that inmate Lee's blood test results, although generally abnormal, were abnormal as compared to other HIV patients. Both Dr. Hegmann and Hancock testified that inmate

5

Lee's abnormal enzyme levels were consistent with HIV patients. Dr. Hegmann testified that had he viewed inmate Lee's test results on Friday, he would have done nothing more than what Hancock already had done, which was to schedule a meeting with the HIV specialist the following Monday.

Lee argues that Dr. Hegmann and Hancock's failure to perform a chest x-ray before inmate Lee died indicates deliberate indifference; however, even if a chest x-ray had been performed immediately on Tuesday, it would not have discovered the heart defect which ultimately led to inmate Lee's death. Furthermore, even if the x-ray would have discovered the defect and doctors subsequently made an incorrect diagnosis as to how to treat it, there would still be no deliberate indifference. *See Johnson*, 759 F.2d at1238.

Because Lee cannot make out deliberate indifference, her claim fails the first prong of this Court's qualified immunity analysis, which is "whether the facts alleged, taken in the light most favorable to the party asserting the injury, show that the officer's conduct violated a constitutional right." *Price*, 256 F.3d at 369.

B.

"Because the burden on a party resisting summary judgment is not a heavy one, one must conclusively justify his entitlement to the shelter of Rule 56(f) by presenting specific facts explaining the inability to make a substantive response as required by Rule 56(e) and by specifically demonstrating 'how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact.'" *SEC v. Spence & Green Chem. Co.*, 612 F.2d 896, 901 (5th Cir. 1980) (quoting *Willmar Poultry Co. v. Morton-Norwich Prod., Inc.*, 520 F.2d 289, 297 (8th Cir. 1975)). Although the district court has the discretion to allow more discovery following a magistrate judge's report and recommendation, the

court is also allowed to consider whether there were ample opportunities for parties to conduct discovery beforehand. *Spence & Green Chem. Co.*, 612 F.2d at 900 (discussing *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 294-99 (1968) (holding that a continuance of summary judgment need not be granted particularly when ample time and opportunities for discovery have already lapsed); *see also Freeman v. County of Bexar*, 142 F.3d 848, 852 (5th Cir. 1998) (finding that the district court is free to consider additional evidence and should not be compelled to ignore that the parties had a full and fair opportunity to present their best evidence to the magistrate judge).

Although courts should liberally construe Rule 56(f) in favor of allowing discovery to proceed, "[l]itigants may not . . . use" the court "as a mere sounding-board for the sufficiency of the evidence." *Freeman*, 142 F.3d at 852. The district court's ability to deny Lee's request for additional discovery is within its discretion, and Lee has presented little evidence describing how additional discovery would produce needed facts, namely any contradictory medical evidence or expert affidavits in support of the claim for deliberate indifference. The report of Dr. Cohen, which the Magistrate Judge excluded, describing it as a "wide-ranging critique of decedent Lee's medical care," did not go to the ultimate issue of proving whether there was deliberate indifference by Dr. Hegmann and Hancock. Because Lee has failed to identify any unspecified facts which may be revealed through additional discovery, the district court did not abuse its discretion.

## IV. CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.

AFFIRMED.

7