United States Court of Appeals
Fifth Circuit

**F I L E D**

June 28, 2006

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 04-11112
Summary Calendar

MICHAEL RAY ARMSTRONG,

                                        Plaintiff-Appellant,

versus

KEITH PRICE; WILLIAM E. WALKER; HERMAN WESTON; FRANK
POHLMEIER, also known as NFN Palimier; TED MOORE;
ERIC GUERRO; MARY HOLLIGAN; RACQUEL HASKINS; DORA
SHIPP; BOBBY STUBBLEFIELD, Building Captain,

                                        Defendants-Appellees.

- - - - - - - - - -
Appeal from the United States District Court
for the Northern District of Texas
USDC No. 2:02-CV-253
- - - - - - - - - -

Before JOLLY, DAVIS, and OWEN, Circuit Judges.

PER CURIAM:[*]

    Michael Ray Armstrong, a Texas prisoner (# 488799), appeals
the district court's order granting the defendants-appellees'
motion for summary judgment, based on the qualified-immunity
doctrine, in this 42 U.S.C. § 1983 civil rights action, in which
Armstrong alleged that the defendants had violated his Eighth
Amendment rights by failing to protect from an assault by a
fellow inmate in April 2002.  It is not disputed that the assault
left Armstrong with a fractured jaw and other injuries.

_____

    [*] Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

In his pro se complaint, Armstrong, who is white, alleged that, on four separate occasions from December 2001 to the end of March 2002, he asked defendant prison officials to place him in protective custody (PC) because of threats made by correctional officers and black inmates, who allegedly believed that Armstrong was jeopardizing inappropriate personal and business relationships between the officers and inmates. The defendants moved for summary judgment, arguing that they were entitled to qualified immunity. The district court granted the motion, adopting the magistrate judge's recommendation as well as making finding and conclusion of its own.

Armstrong has effectively abandoned claims against defendants Captain Stubblefield and Wardens Walker and Price. See Brinkmann v. Dallas County Deputy Sheriff Abner, 813 F.2d 744, 748 (5th Cir. 1987); FED. R. APP. P. 28(a)(9).

We review de novo the grant a motion for summary judgment predicated on qualified immunity. Cousin v. Small, 325 F.3d 627, 637 (5th Cir. 2003). Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits filed in support of the motion, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The moving party bears the burden of showing the district court that there is an absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

Government officials performing discretionary functions are protected from civil liability under the doctrine of qualified immunity if their conduct violates no "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Federal courts review claims of qualified immunity under a two-step analysis. See Saucier v. Katz, 533 U.S. 194, 201 (2001). First, a court asks whether, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officers' conduct violated a constitutional right?" Id. "If the allegations do not establish the violation of a constitutional right, the officer is entitled to qualified immunity. . . . If the allegations make out a constitutional violation, we must ask whether the right was clearly established --that is, whether 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" Price v. Roark, 256 F.3d 364, 369 (5th Cir. 2001) (quoting Saucier, 533 U.S. at 201).

The Eighth Amendment protects prisoners from cruel and unusual punishment. See Hudson v. McMillian, 503 U.S. 1, 5 (1992). "'[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners.'" Johnson v. Johnson, 385 F.3d 503, 524 (5th Cir. 2004) (quoting Farmer v. Brennan, 511 U.S. 825, 833-34 (1994)). To succeed on a failure-to-protect claim, "'the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm' and that the prison officials acted with

'deliberate indifference' to the inmate's safety." Id. (quoting Farmer, 511 U.S. at 834). "An official is deliberately indifferent when he 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Id. (quoting Farmer, 511 U.S. at 837).

Armstrong has failed to demonstrate that the district court erred in concluding that the defendants were entitled to qualified immunity. He has alleged that defendants Holligan, Haskins, and Shipp were classification officers who, as custodians of his letters and complaints regarding threats, were responsible for investigating his requests for protection. Armstrong failed to show, however, that they, as supervisors, were automatically charged with personal knowledge of the risks Armstrong had written about or that they actually were required to investigate those risks. See Evett v. DETNTFF, 330 F.3d 681, 689 (5th Cir. 2003).

In connection with the December 27, 2001, UCC hearing held by defendants Pohlmeier, Guerrero,** and Shipp, Armstrong failed to establish that, given the rather vague information he had provided them, it would be clear to a reasonable officer that such information presented a substantial risk of serious harm. See Saucier, 533 U.S. at 201; Farmer, 511 U.S. at 834. Armstrong

---

** Guerrero's name is rendered, apparently erroneously, as "Guerro" in the complaint's caption.

had made similar allegations earlier in December 2001, but at that time he had explicitly denied that he was requesting PC.

With respect to Armstrong's second request for PC in February 2002, he did provide the names of several officials and inmates who had either made or known about threats toward him, but his specific allegations against defendants Moore and Haskins were not sufficient to make clear that their failure to act in those circumstances subjected Armstrong to a substantial risk of serious harm. See Saucier, 533 U.S. at 201; Farmer, 511 U.S. at 834. Armstrong's summary-judgment materials reflect that he told Moore at that time that no officers had "actually or verbally threatened his life."

Armstrong has maintained that, in late February 2002, he made a third request for PC, providing "5 more official names for questioning." The March 5, 2002, investigation form submitted by Armstrong reflects that defendant Weston did refer these latest allegations to subordinates, including defendant Guerrero, for investigation. A March 8, 2002, inter-office communication from Guerrero to a Major Curran reflected that Guerrero had interviewed Armstrong and several correctional officials, that Armstrong had asked Guerrero not to interview an inmate who knew about threats against Armstrong, and that the officers had denied Armstrong's allegations. This evidence does not establish that either defendant, Armstrong or Weston, knew of and disregarded an excessive risk to inmate health or safety at that time. See Farmer, 511 U.S. at 837.

Finally, with respect to Armstrong's fourth PC request, he has alleged that in late March 2002, defendant Moore failed to conduct interviews of officers and inmates who knew about threats against him. The written materials submitted by Armstrong at that time, however, contained no allegations that had not already been investigated by correctional officials. Armstrong's summary-judgment materials reflected that Moore reported that, at that time, Armstrong refused to give names of black offenders who posed threats to him. Because Armstrong has failed to show that it should have been clear to any of the defendants that his conduct was unreasonable in the situation each defendant confronted, see Saucier, 533 U.S. at 201, we affirm the district court's order granting summary judgment to the defendants.

Armstrong correctly contends that the amended-complaint principles of FED. R. CIV. P. 15 should not preclude a district court from considering evidentiary materials attached to a plaintiff's response to defendants' original summary-judgment motion, when the plaintiff has failed to re-attach those materials to his later response to an amended summary-judgment motion. The record, however, reflects that the court considered all of Armstrong's summary-judgment materials.

The district court did not abuse its discretion in failing to allow Armstrong to conduct discovery in order to obtain prison administrative policies. See King v. Dogan, 31 F.3d 344, 346 (5th Cir. 1994); Tarver v. City of Edna, 410 F.3d 745, 752 (5th Cir. 2005).

AFFIRMED.